IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| VAN TUBBS,<br>BOP Reg. #06762-027,<br>   Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>   Respondent. | )<br>)<br>)<br>)   **CIVIL ACTION NO. 2:17-00508-KD**<br>)<br>)**CRIMINAL ACTION NO. 2:14-00135-KD-N-18**<br>)<br>) |

## REPORT AND RECOMMENDATIONS

Van Tubbs, a federal prisoner proceeding without counsel (i.e., *pro se*), has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 748[1]) challenging the judgment entered against him in the above-styled criminal action. The motion has been referred to the undersigned Magistrate Judge for appropriate action. *See* S.D. Ala. GenLR 72(b); (11/17/2017 electronic reference). Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to appropriate disposition of the § 2255 motion, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

The Government timely filed a response (Doc. 751) in opposition to Tubbs's § 2255 motion, as ordered under Rule 4(b) of the Rules Governing Section 2255 Proceedings (*see* Doc. 749), and Tubbs has timely filed a reply (Doc. 752) to the

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

response.  Having reviewed the parties' submissions and other relevant portions of the record in accordance with Rule 8(a) of the Rules Governing Section 2255 Proceedings, the undersigned finds that neither expansion of the record nor an evidentiary hearing is warranted and that Tubbs's § 2255 motion (Doc. 748) is due be **DENIED** and **DISMISSED with prejudice**.

## I.   *Background*

On May 29, 2014, the grand jury for this district returned an indictment against Tubbs and 17 co-defendants (Doc. 1).  On September 17, 2014, Tubbs, represented by appointed counsel Larry Moorer, Esq., and pursuant to a written plea agreement (Doc. 281), pleaded guilty to both counts of the indictment that were asserted against him – Count 1, which charged an offense of conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; and Count 27, which charged an offense of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  (*See* Docs. 1, 296).  On September 24, 2015, the Court sentenced Tubbs to concurrent terms of 180 months imprisonment followed by 5 years of supervised release on each count, along with a $200.00 assessment.  (Doc. 670). Written judgment was entered on October 1, 2015.  (*See id.*).

Tubbs filed *pro se* a notice of appeal of the judgment (Doc. 678), and new counsel was appointed to represent him on appeal (*see* Doc. 712).  However, on November 18, 2016, the Eleventh Circuit Court of Appeals dismissed Tubbs's direct appeal on motion of the Government pursuant to the appeal waiver in Tubbs's written plea agreement.  (*See* Doc. 734; 11th Cir. Appeal No. 15-14483-FF, Order of

Dismissal).  Tubbs filed the present § 2255 motion less than a year later.  (*See* Doc.
748 at 12).

## II.    *Legal Standards*

### A.    General Considerations under § 2255

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge
by moving the sentencing court to vacate, set aside, or correct the sentence."
*Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014).
Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized
> by law, or is otherwise subject to collateral attack, may move the court
> which imposed the sentence to vacate, set aside or correct the sentence
> ... If the court finds that the judgment was rendered without jurisdiction,
> or that the sentence imposed was not authorized by law or otherwise
> open to collateral attack, or that there has been such a denial or
> infringement of the constitutional rights of the prisoner as to render the
> judgment vulnerable to collateral attack, the court shall vacate and set
> the judgment aside and shall discharge the prisoner or resentence him
> or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files
> and records of the case conclusively show that the prisoner is entitled to
> no relief, the court shall ... grant a prompt hearing thereon, determine
> the issues and make findings of fact and conclusions of law with respect
> thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary
> hearing if he "alleges facts that, if true, would entitle him to relief."
> *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting
> *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A]
> petitioner need only *allege*—not prove—reasonably specific, non-
> conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6.
> However, a district court need not hold a hearing if the allegations are

"patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). In making this determination, the Court is aware that it must "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255." *Winthrop-Redin*, 767 F.3d at 1215.

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

The " 'concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.' " *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).  "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992).  *See also, e.g.*, *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("'A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.'" (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (" 'Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction.' " (quoting *United States v. Bonilla,* 579 F.3d 1233, 1240 (11th Cir. 2009)).  Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  Therefore, when, as here, a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).  *See also Bousley*, 523 U.S. at 618 ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

## B.     Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution gives criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).

" 'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice

prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]'" *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g.*, *Burt v. Titlow*, 571 U.S. 12, 24 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A

petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence,"…in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (citing *Strickland*, 466 U.S. at 689-91) (citations and quotations omitted).

"A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.' " *Cuyler v.*

*Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting *McMann*[ *v. Richardson*], 397 U.S. [759,] 770, 90 S. Ct. [1441,] 1448[ (1970)]). The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Slicker v. Dugger*, 878 F.2d 1380, 1381 n.1 (11th Cir. 1989) (per curiam); *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir. 1989); *McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986) (per curiam)…

…

…*Hill* clarified the *Strickland* second or "prejudice" requirement in the context of guilty pleas: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S. Ct. at 370; *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (per curiam); *see Long v. United States*, 883 F.2d 966, 968 n.4 (11th Cir. 1989) (per curiam); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 884 (1988); *see also Holmes*, 876 F.2d at 1553, *Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987) (These cases were remanded to the district court to determine if accurate, rather than incorrect, information by the defense counsel as to the length of sentence would have changed the defendant's plea.); *cf. Betancourt v. Willis*, 814 F.2d 1546, 1549 (11th Cir. 1987) (This court affirmed the district court's granting a habeas corpus petition based upon its conclusion that petitioner's plea was not voluntary and that his counsel provided ineffective assistance because the evidence was "uncontroverted that petitioner was completely unaware of the ultimate consequences of his plea because his counsel misrepresented the existence of a sentence reduction agreement."). The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This

assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

474 U.S. at 59, 106 S. Ct. at 370; *McCoy*, 804 F.2d at 1198–99.

The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973); *see Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir.) (per curiam) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process."), *cert. denied*, 469 U.S. 837, 105 S. Ct. 134, 83 L. Ed. 2d 74 (1984). The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions" in his counsel's advice regarding the plea. *McMann*, 397 U.S. at 774, 90 S. Ct. at 1450; *Tollett*[ *v. Henderson*], 411 U.S. [258,] 267, 93 S. Ct. [1602,] 1608[ (1973)]; *see Hill*, 474 U.S. at 56, 106 S. Ct. at 369 ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). Without "reasonably effective assistance of counsel in connection with the decision to plead guilty," a defendant cannot enter a knowing and voluntary plea because the plea does not represent an informed choice. *McCoy*, 804 F.2d at 1198; *see Scott*[ *v. Wainwright*], 698 F.2d [427,] 429[ (11th Cir. 1983)]. Based upon his familiarity with the facts and law, defense counsel must advise the defendant. *Scott*, 698 F.2d at 429. "Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants." *Id.* (emphasis added); *see McMann*, 397 U.S. at 771, 90 S. Ct. at 1449; *Long*, 883 F.2d at 969.

The Supreme Court has recognized that the decision to plead guilty may occur without all of the state's evidence and necessarily takes place without knowledge of all facts revealed by witnesses at trial. *McMann*, 397 U.S. at 769–70, 90 S. Ct. at 1448. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer

and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); *Downs–Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Tafero*, 796 F.2d at 1320; *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986), *cert. denied*, 481 U.S. 1042, 107 S. Ct. 1986, 95 L. Ed. 2d 825 (1987)…

*Stano v. Dugger*, 921 F.2d 1125, 1149-51 (11th Cir. 1991) (en banc) (footnote omitted).[2]  In claiming prejudice under *Strickland* and *Hill*, "[a] movant must [also] allege facts that would prove that a decision not to plead guilty 'would have been rational under the circumstances.'" *Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

## III.   *Analysis*

### A.   **Grounds for Relief**

Tubbs asserts five grounds for relief under § 2255, each alleging some form of ineffective assistance of trial counsel.  The undersigned will address each in turn.

---

[2] *Accord, e.g., Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993) ("The Supreme Court has held 'that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.' *Hill*, 474 U.S. at 58, 106 S. Ct. at 370. Under the *Strickland* test, Garrett initially must show 'that counsel's representation fell below an objective standard of reasonableness.' *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). While it need not be errorless, counsel's advice '*must be within the realm of competence demanded of attorneys representing criminal defendants.*' *Stano*, 921 F.2d at 1151. Providing meaningful advice on the options available to a defendant obligates counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. *Hill* modified the second part of the *Strickland* test in the context of a guilty plea. Garrett 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' 474 U.S. at 59, 106 S. Ct. at 370.").

## 1.

Tubbs's Presentence Investigation Report (PSI) calculated his U.S. Sentencing Guidelines base offense level to be 32, which included a 2-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during the offenses of conviction. (Doc. 568 at 10, ¶ 35). Tubbs's first ground for relief alleges that counsel was ineffective for failing to timely object to this enhancement.

As directed by the Court, the Probation Office filed a draft PSI for Tubbs on January 9, 2015 (Doc. 414), and written objections from the parties were due by January 30, 2015. (*See* Doc. 296). Tubbs filed no objections by that deadline, and the Probation Office issued its final PSI for Tubbs on April 21, 2015 (Doc. 568). The day before Tubbs's sentencing hearing, his counsel, without requesting leave of the Court to excuse its untimeliness, filed an objection to the 2-level dangerous weapon enhancement, asserting that Tubbs "denies he possessed a firearm." (Doc. 645). When counsel raised that objection at the sentencing hearing, the Court overruled it, stating:

> Well, first of all, it was untimely filed. That's the basis for denial. Even if I were to consider the merits, based on the information that's contained in the PSI, which wasn't objected to, that is the facts, although there's no indication that he owned the gun or had a gun. He was participating in a conspiracy in which he would come down to the Marion area where there were a lot of his co-conspirators who had guns such that he would be held responsible for that. So that objection is denied on those two grounds.

(*Id*.).

While counsel erred in failing to timely object to the dangerous weapon enhancement, Tubbs has failed to show that he was prejudiced by this error, since the Court clearly stated that it would have overruled the objection on the merits even if it was timely raised. While acknowledging that there was "no indication [Tubbs] owned the gun or had a gun" during the offenses of conviction, the Court nevertheless held him responsible for firearms possessed by co-conspirators, which it was permitted to do. *See United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (per curiam) ("The § 2D1.1(b)(1) enhancement may be applied when the firearm is possessed by a co-conspirator. *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir.), *cert. denied* 546 U.S. 886, 126 S. Ct. 221, 163 L. Ed. 2d 193 (2005). 'The enhancement applies to a co-conspirator when…'(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant.' " *Id*.). While it is true that the Court relied on other unobjected-to facts in the PSI to reach this conclusion, Tubbs's § 2255 briefing does not identify any specific evidence that could have rebutted those facts in the PSI had it been represented at the sentencing hearing. Accordingly, Tubbs is due no relief on Ground 1.

**2.**

Tubbs's second ground for relief claims that counsel did not adequately advise him about his case prior to the entry of his guilty plea. In support, Tubbs alleges:

Petitioner's counsel failed to explain to Petitioner exactly what he was being charged with, go over his criminal history with him, or even meet

> with him until immediately before the sentencing hearing. Additionally, he misrepresented to Petitioner what his sentence would be, stating that he would receive approximately 80 months, rather than the sentence he received…Defense counsel was also ineffective for giving incorrect sentencing information in contemplation of his plea…Defense knew or should have known that Petitioner, a man with limited education, and cognitive difficulties as noted by the U.S. Social Security Department, would require more than a few minutes to understand the details of a complicated plea agreement.

(Doc. 748-1 at 5 – 6). In his reply, Tubbs further alleges:

> [C]ounsel never went over the plea details until he was back in court, and [Tubbs] was told by counsel to agree with whatever the judge said at the plea colloquy. In fact, the plea agreement was faxed to Petitioner at the jail (and faxed back to him from the jail, as shown by the markings on the document), and not even delivered in person.[3] Given the fact that Petitioner received Social Security benefits for cognitive issues, it is not only inadequate representation, but unconscionable that he did not review the plea agreement in person.

(Doc. 752 at 5). Initially, Ground 2 fails because Tubbs has failed to show prejudice – that is, he fails to even allege, much less present non-conclusory facts demonstrating, that but for counsel's alleged failure to adequately advise him, he would not have pleaded guilty and would have insisted on going to trial. Indeed, Tubbs's reply indicates he did not intend to go to trial, instead conclusorily insisting that adequate advice of counsel would have resulted in a more favorable outcome "by reason of a plea to a lesser charge or to a sentence of less prison time." (Doc. 752 at

---

[3] The undersigned acknowledges that there is computer-generated print at the top of the signature pages for the plea agreement and the accompanying factual resume indicating that those two pages were faxed on September 15, 2014 (*see* Doc. 281 at 13, 26), while no such similar print is found on the other pages of the plea agreement and factual resume.

6).  Tubbs fails, however, to explain how this hypothetical more-favorable outcome might have come about had counsel performed more effectively.[4]

Additionally, Tubbs's few non-conclusory factual allegations in support of Ground 2 are affirmatively contradicted by the express terms of his written plea agreement, and his sworn testimony and the Court's findings at his guilty plea hearing.

> [P]lea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977); *see id.* ("To allow indiscriminate hearings in federal postconviction proceedings ... for federal prisoners under 28 U.S.C. § 2255 ... would eliminate the chief virtues of the plea system—speed, economy, and finality."). While § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," ... "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71–72, 97 S. Ct. 1621. As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74, 97 S. Ct. 1621; *see id.* at 80 n. 19, 97 S. Ct. 1621 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74, 97 S. Ct. 1621.

---

[4] *Rosin v. United States*, 522 F. App'x 578 (11th Cir. 2013) (per curiam) (unpublished), which Tubbs has cited in support of Ground 2, is not instructive in this case.  The only issue the Court of Appeals addressed there, and the only ground on which it reversed the district court's decision on the § 2255 motion there, was the district court's application of an erroneous standard of proof in analyzing *Strickland*'s "prejudice" prong.

*Winthrop-Redin*, 767 F.3d at 1216.  In sum, because " '[s]olemn declarations in open court carry a strong presumption of verity[,]' *Blackledge,* 431 U.S. at 74, 97 S. Ct. 1621[,]" when a defendant "ma[k]e[s] statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) (per curiam)."  *Id.* at 1217 (some alterations added).[5]

Tubbs's signed plea agreement expressly advised, among other things, (1) that the Court could impose 10 years to life imprisonment for Count 1, and up to 20 years imprisonment for Count 27; (2) that the "Court will impose the sentence in this case[;]" (3) that the plea agreement did "not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range[;]" (4) that the Sentencing Guidelines "are advisory and do not bind the Court[;]" (5) that "no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation[;]" (6) "that the determination

---

[5] *Accord, e.g., United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." (citing *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975) (per curiam))); *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (per curiam) (unpublished) ("We apply a 'strong presumption' that statements made by a defendant during his plea colloquy are true, *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994); therefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988).  Nothing in the record shows that Cardenas has satisfied his burden of showing that his sworn statements made during the plea colloquy-including that no one had predicted what sentence he would receive-were false; and we reject his claim that his guilty plea was involuntary.").

of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court[;]" and (7) that, with regard to sentencing, the Government's only obligation would be to "recommend to the Court that [Tubbs] be sentenced at the low end of the advisory sentencing guideline range as determined by the Court." (Doc. 281 at 3 – 5, 6, ¶¶ 11 – 13, 20).[6]   The plea agreement also included a factual resume, also signed by Tubbs, that set forth the elements of the two counts to which he pleaded guilty, and a statement of the factual basis for the offenses. (Doc. 281 at 14 – 26).

In sworn testimony at his guilty plea hearing, Tubbs answered "yes" to each of the following questions asked of him by the Court: (1) "Can you read, write, and understand the English language?"; (2) "did…you receive a copy of the indictment and go over it with your attorney?"; (3) "did…you discuss your case with your attorney and discuss possible defenses to this case with your attorney?"; (4) "after discussing possible defenses to this case, are you satisfied with your attorney's advice that you plead guilty?"; (5) "are you satisfied with your attorney's representation of you in

---

[6] To the extent Tubbs argues that his counsel rendered ineffective assistance by failing to adequately explain the terms of the appeal waiver in his plea agreement, that argument fails because Tubbs is procedurally barred from claiming prejudice by any such errors.  The Court of Appeals dismissed Tubbs's direct appeal pursuant to the appeal waiver, meaning it necessarily found that Tubbs's agreement to the waiver was "knowing and voluntary."  *See* (Doc. 734); *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993) ("for a waiver to be effective it must be knowing and voluntary").  Accordingly, Tubbs is procedurally barred from re-litigating that issue on collateral review, and therefore cannot argue that any error of counsel rendered his agreement to the appeal waiver unknowing and involuntary.  *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." (quotation omitted)).

general?"; (6) "Your plea agreement provides that in return for your guilty plea, the Government is going to recommend that you be sentenced at the low end of the guidelines...Is that the way you understand your plea agreement?"; (7) "did you read that plea agreement and discuss it with your attorney before you signed it?"; (8) do you understand that "you are potentially facing a ten-year mandatory minimum up to life" sentence, and that the money laundering conspiracy charge "carries a penalty of up to 20 years in prison...?"; (9) "[T]here are sentencing guidelines that apply to your case.  You went over those with your attorney?"; (10) The guidelines "are just advisory. I'm not required to follow those...Do you understand that?...And also the estimate that was given is just that.  It's an estimate.  We won't know what your guidelines are until we've done a full background check of everything.  Do you understand that?"; and (11) "So you understand that you have a right to have a jury determine how much drugs were involved? Do you understand that?... But by that plea agreement, you are asking me to determine the amount of drugs and by -- if I determine the amount of drugs, once I determine that, then I'll see if that is the amount that, you know, implicates the ten-year mandatory minimum...So you're actually giving me the power to determine an element of the offense that a jury normally determines. Do you understand that?"  (Doc. 719 [Change-of-Plea Hearing Transcript]).

Tubbs answered "no" to the following questions from the Court: (1) "Have you had any problems communicating with your attorney?"; (2) "Did anybody promise you anything different or something that's not included in that plea agreement? For

instance, did a law enforcement agent tell you, 'Oh, for sure, you're going to get cooperation' or something like that? Anything that's not in that plea agreement?"; and (3) Did "[a]nybody force you to plead guilty?" (*Id.*)  When asked if he had "ever been treated for any type of mental illness," Tubbs and his counsel engaged in the following exchange with the Court:

> THE CLERK: And you, you're good?
>
> V. TUBBS: Yes, ma'am.  I was on disability.
>
> THE COURT: For?
>
> V. TUBBS: They said I was mental.
>
> THE COURT: Like mental in what way?
>
> V. TUBBS: Well, I don't know.  But you know, I don't know.  I don't know.  But mental, slow.  They said I was slow or whatever.
>
> THE COURT: You're slow.  But you don't have a problem reading, do you?
>
> V. TUBBS: No, I can read.
>
> THE COURT: Have you had any problem communicating with Mr. Moorer?
>
> V. TUBBS: No, ma'am.
>
> THE COURT: Mr. Moorer, have you noticed anything about him that would make you think he's not able to understand what's going on today?
>
> MR. MOORER: No, nothing about the conversations we've had.  He's been pretty clear in discussing it with me.

(*Id.* at 7 – 8).

At the Court's direction, counsel for the Government then proceeded to recite the elements of the two offenses to which Tubbs was pleading guilty and the factual basis for those two offenses (*see id.* at 19 – 27), which substantially tracked the signed factual resume included with Tubbs's plea agreement.  Tubbs answered "yes" when asked if he "agree[d] the Government could prove those facts against" him, and that he pleaded "guilty" to the charges.  (Doc. 719 at 28).  The Court then accepted Tubbs's plea, finding that Tubbs was "fully competent and capable of entering an informed plea; [was] aware of the nature of the charges and the consequences of the plea; and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense."  (*Id.* at 28).

The foregoing representations and findings of the Court affirmatively contradict Tubbs's sparse allegations supporting his claim that counsel failed to adequately advise him prior to entry of his guilty plea, and Tubbs has not met his "heavy burden" of showing that the Court should not now rely on them.  *See Winthrop-Redin*, 767 F.3d at 1216.  Accordingly, for the foregoing reasons, Tubbs is due no relief on Ground 2.

### 3.

Tubbs's third ground for relief claims generally that trial counsel failed to investigate the Government's evidence prior to advising Tubbs to plead guilty.  As the Government correctly points out, Tubbs "fail[s] to identify any specific an available evidence that, if presented, would have made any difference in his case," (Doc. 751 at 4), and claims based on unsupported generalizations do not warrant

relief under § 2255. *See Winthrop-Redin*, 767 F.3d at 1216.[7] Accordingly, Tubbs is

due no relief on Ground 3.

## 4.

"The Sentencing Guidelines provide for a sentencing enhancement for

defendants who are 'career offenders.' ... A defendant is considered a 'career offender'

if three conditions are met: (1) the defendant was at least 18 years old at the time of

the conviction; (2) the offense of the conviction is a felony that is either a 'crime of

violence' or a controlled substance offense; and (3) the defendant has at least two prior

felony convictions of either a crime of violence or a controlled substance offense."

*Buckles v. United States*, 705 F. App'x 886, 887 (11th Cir. 2017) (per curiam)

(unpublished) (citing U.S.S.G. § 4B1.1). The PSI determined that Tubbs qualified for

the "career offender" enhancement, specifically citing two prior felony convictions

detailed in paragraphs 52 and 56 of the PSI  – a 1997 Indiana conviction for two

counts of dealing with cocaine, and a 2002 federal conviction for use of a

communication facility in the facilitation of a distribution of controlled substances –

that qualified as "controlled substances offenses." (Doc. 568, ¶¶ 41, 52, 56).[8]

---

[7] In his reply, Tubbs suggest that counsel "perhaps had not even read the PSI" when he was discussing the plea agreement with Tubbs. (Doc. 752 at 7). Given that the PSI was not prepared until after Tubbs pleaded guilty, however, counsel could not have been ineffective for failing to read it during plea negotiations. *See* Fed. R. Crim. P. 32(e)(1) ("Unless the defendant has consented in writing, the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or nolo contendere, or has been found guilty.").

[8] As Tubbs points out, paragraph 61 of the PSI also noted a third "controlled substance offense" – a 2012 Indiana conviction for dealing in cocaine – though it did not specifically cite that offense in applying the "career offender" enhancement. (Doc. 568, ¶ 61). However, the PSI noted that, "[a]ccording to the government, th[at]

Tubbs's fourth ground for relief asserts that counsel was ineffective for failing to object the "career offender" enhancement, claiming that his 1997 Indiana convictions "arguably do not qualify as predicate offenses to establish Career Offender status." (Doc. 748-1 at 9). However, as the Government correctly notes, Tubbs proffers no grounds on which counsel could validly have objected to the enhancement, and counsel cannot be found ineffective for failing to raise meritless issues. *See Brownlee*, 306 F.3d at 1066 ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."); *Curbelo*, 726 F.3d at 1267 ("[I]t goes without saying that counsel is not ineffective for failing to file a meritless suppression motion.").[9] Accordingly, Tubbs is due no relief on Ground 4.

**5.**

Tubbs's fifth and final ground for relief alleges that counsel "failed to present character witnesses and other mitigating evidence at the penalty phase," such as "any evidence of Petitioner's mental state at the time the crime was committed, even though the PSI itself makes reference to this fact." (Doc. 748-1 at 10-11 (citing "PSI, page 19")).[10] Tubbs fails to specify what "character witnesses," "other mitigating

---

charge[] [was] related to the instant offense[,]" and it did not count that conviction in scoring Tubbs's criminal history or in applying the "career offender" enhancement. (*See id.*, ¶¶ 41, 61)

[9] In his reply, Tubbs argues that his 1997 Indiana conviction was "arguably to [sic] far removed in time to be included for career offender purposes." (Doc. 752 at 8). However, the guideline on which Tubbs relies in making this argument, § 4A1.2(e), by its terms applies only to counting "sentences," while the "career offender" guideline, § 4B1.1, concerns counting "convictions." The "career offender" guideline provides no temporal limitation on what prior felony convictions can be counted.
[10] Paragraph 74 of Tubbs's PSI (Doc. 568) stated:

evidence," or "evidence of [his] mental state at the time the crime was committed" that counsel could have, but failed to, present at sentencing, and claims based on such unsupported generalizations do not warrant relief under § 2255. *See Winthrop-Redin*, 767 F.3d at 1216.[11]

Accordingly, Tubbs is due no relief on Ground 5, and his § 2255 motion is due to be **DENIED** and **DISMISSED with prejudice**, without an evidentiary hearing.

## B.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding.  Rule 11(a) of

---

During the presentence interview, Tubbs stated that he was diagnosed as "kind of slow" by Social Security Administration physicians in 1995, and has received disability benefits since that time. He was unable to elaborate further about his disability. It is noted in the previously prepared presentence report that the defendant was diagnosed with severe depression in 1995. He did not report any family history of mental or emotional health problems. During the presentence interview, Tubbs communicated appropriately and appeared to understand the gravity of his current legal situation.

[11] As to Tubbs's mental state at the time of the offense, any attempt by Tubbs to downplay at sentencing his culpability for the offenses to which he pleaded guilty could have jeopardized the 3-point adjustment for acceptance of responsibility that the PSI gave him. *See United States v. Smith*, 127 F.3d 987, 989 (11th Cir. 1997) (en banc) ("Our case law permits a district court to deny a defendant a reduction under § 3E1.1 based on conduct inconsistent with acceptance of responsibility, even when that conduct includes the assertion of a constitutional right…In addition, frivolous legal challenges could suggest to the district court that the defendant has not accepted responsibility for his conduct. Therefore, we hold that a district court may consider the nature of such challenges along with the other circumstances in the case when determining whether a defendant should receive a sentence reduction for acceptance of responsibility.").

the Rules Governing § 2255 Proceedings.  "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  28 U.S.C.A. § 2253(c)(1)(A).

"A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)).  Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).).  "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part."  *Miller-El*, 537 U.S. at 338 (quotations omitted).  However, "a COA does not require a showing that the appeal will succeed."  *Id.* at 337.

Upon consideration, the undersigned finds that Tubbs should be **DENIED** a Certificate of Appealability as to the present § 2255 motion, as reasonable jurists would not debate whether his § 2255 motion should be resolved in a different manner

or that any of the issues presented is adequate to deserve encouragement to proceed

further.[12]

### C.    Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in

writing that it is not taken in good faith."  28 U.S.C. § 1915(a)(3).

> A party demonstrates good faith by seeking appellate review of any issue
> that is not frivolous when examined under an objective standard. *See
> Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed.
> 2d 21 (1962). An issue is frivolous when it appears that "the legal
> theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d 392, 393
> (11th Cir. 1993) (citations omitted). In other words, an IFP action is
> frivolous, and thus not brought in good faith, if it is *860 "without
> arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d 1346, 1349
> (11th Cir. 2001). More specifically, "arguable means capable of being
> convincingly argued." *Sun v. Forrester,* 939 F.2d 924, 925 (11th Cir.
> 1991) (internal quotations and citations omitted). Nevertheless, where
> a "claim is arguable, but ultimately will be unsuccessful," it should be
> allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 515
> (11th Cir. 1991).

---

[12]    Rule 11(a) further provides: "Before entering the final order, the court may
direct the parties to submit arguments on whether a certificate should issue."  If there
is an objection to this recommendation by the petitioner, he may bring this argument
to the attention of the district judge in the objections permitted to this report and
recommendation.  *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL
1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL
1930662 (S.D. Ala. May 19, 2011); *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL
3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report &
recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D.
Oct. 5, 2010).

Should the Court adopt this recommendation and deny a certificate of
appealability, the movant "may not appeal the denial but may seek a certificate from
the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a) of the
Rules Governing Section 2254 Cases in the United States District Courts.

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished).

Having considered the issues raised as set forth above, the undersigned **RECOMMENDS** the Court certify that any appeal by Tubbs of the dismissal of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[13]

### IV.   *Conclusion*

In accordance with the foregoing analysis, it is **RECOMMENDED** that Van Tubbs's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 748) be **DENIED** and **DISMISSED with prejudice**.   It is further **RECOMMENDED** that the Court find Tubbs not entitled to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

**DONE** this the 13th day of March 2019.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] Should the Court adopt this recommendation and deny leave to appeal *in forma pauperis*, Tubbs may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.