IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 2:14-00135-KD-N |
| | ) |
| VAN TUBBS, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on Defendant Van Tubbs' Petition for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act, Sec. 603(B) (doc. 785), medical records in support (doc. 785-1, under seal), the United States' response and medical records (doc. 790, doc. 792, under seal),[1] letter in support from LaTasha Starnes (doc. 795), and the United States' notice (doc. 799). Upon consideration, and for the reasons set forth herein, the Petition is DENIED.

I. Background

Tubbs was named as a defendant in an 18-defendant, 31-count Indictment charging drug-trafficking and money laundering offenses including three forfeiture allegations. Prior to his Indictment in this action, Tubbs had been convicted of several criminal offenses in Fort Wayne, Indiana and was serving a sentence for dealing cocaine. The criminal conduct underlying that offense was related to the offenses in this action.

Tubbs pled guilty to conspiracy to possess with intent to distribute crack cocaine, cocaine, marijuana, and hydrocodone acetaminophen, and money laundering conspiracy (Counts 1 and 27). In his plea agreement, Tubbs admitted supplying cocaine and marijuana in substantial

---

[1] The United States' motion for leave to file under seal (doc. 791) is GRANTED.

quantities to the leader of the conspiracy and that his payment was transferred through nominees in the conspiracy (doc. 281). At sentencing, his total offense level was 34 and his criminal history category was VI. He was classified as a career offender. His advisory Sentencing Guidelines range was 262 to 327 months as to Count 1 and 240 months (the statutory maximum) as to Count 27. Tubbs was subject to a mandatory minimum of 120 months as to Count 1.

A variance sentence outside the advisory guidelines range was imposed. In September 2015, Tubbs was sentenced to serve 180 months as to each count, concurrent, and concurrent with his state court sentence. On motion of the United States, his appeal was dismissed on basis of the appeal waiver in his plea agreement (doc. 734).

Tubbs is now 54 years old. He is incarcerated at FCI Fort Dix at Joint Base MDL, New Jersey. His estimated release date is February 24, 2028.

II. Exhaustion

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)". The Court may do so upon finding that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

The United States argues that Tubbs has not satisfied the procedural prerequisites because his requests for compassionate release, including his first request made on April 10, 2020, did not meet the minimum requirements set out in the Bureau of Prison's Program Statement 5050.50 (doc. 790, p. 12). Alternatively, the United States argues that if the Court construes Tubbs' requests to the Bureau of Prisons made between April 17, 2020 and May 12, 2020, as sufficient requests for compassionate release, Tubbs improperly filed his motion on May 13, 2020, within the 30-day time frame in § 3582(c)(1)(A)(i). The United States argues that the 30-day time frame is jurisdictional, or at the least, the statute created a mandatory claim-processing rule that must be enforced when properly raised by a party, such as here, and therefore, Tubbs' motion should be dismissed without prejudice (Id., p. 19-20).

Tubbs states that his request for reduction of sentence at the "institutional level and staff level was denied" (doc. 785, p. 2). Tubbs made a Request to Staff on April 10, 2020 seeking release because of Covid 19 and his age and chronic medical conditions. He added that he is a non-violent offender and a military veteran (doc 785, p. 15). He also made a request to the Assistant Warden dated April 17, 2020. He sought immediate release pursuant to the April 3, 2020 memo issued by Attorney General William Barr to the Bureau of Prisons Director Michael Carvajal and the CARES Act. Tubbs asserted that his age and chronic medical conditions made him "highly susceptible to contracting the Covid 19 virus" in the crowded prison environment at FCI Fort Dix (doc. 785, p. 14).

Tubbs sent another Inmate Request to Staff on April 23, 2020. He sought compassionate release or home confinement under 18 U.S.C. § 3624. The Request was disposed of that same day, when the staff member explained that "compassionate release and home confinement have

different criteria" and Tubbs should "state one issue only to better answer [his] request" (doc. 785-1, p. 2).

Tubbs then received an "Inmate Request to Staff Response" dated May 5, 2020. His request appears to have been made under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Again, he was advised to resubmit his request with more specificity. The writer explained that the Bureau of Prisons Program Statement 5050.50 provided "guidance on the types of circumstances that present extraordinary and compelling reasons" and that Tubbs should explain which circumstance applied to him (doc. 785, p. 1).

On May 12, 2020, Tubbs made a written request to his Warden for compassionate release and release based on the CARES Act (doc. 790, p. 47-48). Tubbs again stated that his age and medical conditions made him susceptible to contracting the Covid 19 virus in the prison environment and that he met the criteria by the Centers for Disease Control for persons at risk. He also stated he was a non-violent offender and his conduct in prison had shown exemplary behavior. On May 19, 2020, his request was denied for lack of specificity (Id., p. 46).

Tubbs filed his motion on May 13, 2020, by placing it in the prison mail. Thus, his motion was filed after the lapse of 30 days from his April 10, 2020 request to staff but before the 30-day period lapsed from his May 12, 2020 request to his Warden. However, more than 30 days have now passed since Tubbs' request was received by the Warden, as evidenced by the May 19, 2020 denial. In this procedural posture, the Court sees no reason to dismiss the motion without prejudice. See United States v. Skaff, 2020 WL 3490074, at *1 (S.D.W. Va. June 25, 2020) ("Although Mr. Skaff petitioned the court on June 4, 2020, before 30 days had passed since the Warden's receipt, I find it would be a waste of judicial resources to have Mr. Skaff refile the motion now that 30 days have elapsed since the Warden's receipt of the compassionate

release request."); United States v. Blake, No. 15-CR-80018, 2020 WL 4677309, at *4 (S.D. Fla. Aug. 12, 2020) (same).

### III. Compassionate Release

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 730, (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the Court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

"Extraordinary and compelling" reasons are not defined in the statute. Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act, the Sentencing Commission promulgated the following Policy Statement, which set forth in relevant part, as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>   (1) (A) [2]  Extraordinary and compelling reasons warrant the reduction; . . .
>
>   (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>   (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The Commentary to the Policy Statement includes four examples of extraordinary and compelling reasons to consider a reduction of sentence under § 3582(c)(1)(A). Tubbs' alleged reasons fall under two examples found in Application Notes 1(A)(ii)(I)[3] and (D) (docs. 785, 785-1 (sealed)). Specifically, Tubbs alleges that he is a chronic care inmate with high blood pressure, sleep apnea, respiratory issues which require a C-Pap machine, thyroid disease, obesity, and

---

[2] Subparagraph (1)(B) applies to prisoners who are 70 years or older and have served at least 30 years in prison. Since Tubbs is 54 years old, this Policy Statement does not apply. Also, Tubbs was sentenced to 180 months. His estimated release date is February 24, 2028. Thus, he has served approximately half of his sentence. The Policy Statement indicates that when release has been granted, defendants have served a longer sentence or longer percentage of their sentence. See U.S.S.G. 1B1.13, cmt. 1(B) (possible compassionate release where defendant is at least 65 years old; experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.).

[3] Tubbs does not allege that he has been diagnosed with a terminal illness as defined in Application Note 1(A)(i), that his family circumstances meet the criteria in Application Note 1(C), or that he meets the age requirement in Application Note 1(B) (possible compassionate release where defendant is at least 65 years old). U.S.S.G. 1B1.13, cmt. n. 1((A)(i), (B) & (C).

declining vision (doc. 785, p. 2).  He moves the Court for compassionate release on basis that Covid 19 is spreading at FCI Fort Dix and in New Jersey, and his chronic health conditions put him at increased risk of life-threatening illness should he contract the virus.  As of September 20, 2020, there were no reported cases of Covid 19 at FCI Fort Dix.  Thirty-six staff and six inmates had recovered.  https://www.bop.gov/coronavirus/ Federal Bureau of Prisons (last visited September 20, 2020).

      Tubbs alleges that the Warden, in a memo to the inmate population, acknowledged that social distancing is not possible at FCI Fort Dix. Tubbs states that inmates are housed in re-purposed military barracks. He points out that the number of inmates housed in his building exceeds the maximum number of persons the barracks were designed to house and that inmates are housed in less than the required square footage per inmate that is typically required of federal prisons. He also alleges that the conditions of the re-purposed military barracks make sanitation and hygiene impossible. Tubbs argues that the overcrowded living conditions in the barracks and common areas increase the risk of contracting the virus. Tubbs also expressed concern regarding transmission through the laundry. He alleges that infected inmates are housed in the same compound as the laundry and he fears transmission as the laundry is distributed (doc. 785).[4]

      Application Note 1(A)(ii)(I) provides that a defendant's physical or medical condition may qualify if certain criteria are met. Specifically, if the defendant is -

> (I) suffering from a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[4] As to a re-entry plan, Tubbs explains that he will live with his son Tyrell Tubbs in Indiana.  He states that Tyrell has stable employment in construction and has a position for him as a temporary factory worker.  He states he has not been in trouble in prison, has always held a job, and is currently working in food service (doc. 785, p. 12).

U.S.S.G. § 1B1.13 cmt. n. 1(A).[5]

Application Note 1(D), provides that the Court may consider "Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. §1B1.13 cmt. n. 1(D). In its present version, Application Note 1(D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3 (D. Me. July 11, 2019). But now that the First Step Act allows the inmate to move for compassionate release without the BOP's support, it is unclear what "other" reasons can be relied upon for compassionate release. However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3.

The United States reports that Tubbs' medical records show he has a Body Mass Index in excess of 30 (doc. 799). Based on CDC guidelines, the United States agrees that during the Covid 19 pandemic, his BMI[6] presents "'a serious physical or medical condition . . . that substantially diminishes'" his ability to provide self-care and from which he is not expected to recover (doc. 205, citing Application Note 1(A)(ii)(I) of the Policy Statement and *Centers for Disease Control, At Risk for Severe Illness,* available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last revised July 17, 2020).) (doc. 799;

---

[5] Tubbs does not allege that he is "suffering from a serious functional or cognitive impairment" or that he is "experiencing deteriorating physical or mental health because of the aging process[.]" U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii) II & III.

[6] Tubbs is 5'9" tall and weighs 238 pounds which yields a Body Mass Index of 35.1 (doc. 792, p. 2). https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.

doc. 792, p. 8 (sealed)). The United States concedes that because Tubbs' ability to provide self-care against Covid 19 is substantially diminished due to his obesity, he has set forth extraordinary and compelling reasons for compassionate release (Id.)

However, the Court may grant a reduction of sentence for early release only "after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)." 18 U.S.C. § 3582(c)(1)(A). The United States opposes Tubbs' motion on basis that the relevant factors in 18 U.S.C. § 3553(a) weigh against a reduction in sentence. The United States points out that Tubbs was part of a "large and violent drug conspiracy" that extended over a period of years, that he provided regular "shipments of up to 15 kilograms of cocaine and 100 pounds of marijuana", and facilitated the conspiracy by concealing the payments for the shipments (doc. 790, p. 30). The United States also points out that Tubbs' advisory sentencing guidelines were 235 to 293 months, but he received a variance sentence of 180 months. The United States argues that this sentence remains fair and appropriate to address Tubbs' conduct and his criminal history.

The Court has considered Tubbs' allegations regarding the programs he has taken, his conduct while incarcerated, and consistent work history (doc. 785, p. 12). The Court has also considered the "nature and circumstances" of Tubbs' offenses and finds that this factor does not weigh in favor of a sentence reduced to time served. 18 U.S.C. § 3553(a)(1). Tubbs was involved a major multi-drug conspiracy that brought a large quantity of drugs over a period of approximately four years into Marion, Alabama and Selma, Alabama. Although he was not a leader or organizer of the conspiracy, Tubbs was a major participant.

Also, Tubbs' "history and characteristics" do not weigh in favor of a sentence reduced to time served. Id. Tubbs had at least two prior felony convictions for controlled substance offenses and was considered a career offender for purposes of calculating his advisory

sentencing guidelines. Tubbs' criminal history shows that between 1993 and his arrest in this action in 2014, he had been convicted of two counts of providing false information to law enforcement, battery and operating a vehicle without insurance, resisting law enforcement, criminal conversion, attempted fraud, forgery, never receiving an Indiana driver's license, resisting law enforcement, use of a communication facility in violation of 21 U.S.C. § 841(a)(1), battery including one instance of domestic violence, two charges of operating a vehicle with a suspended license, possession of marijuana, and three charges of dealing in cocaine (doc. 658).

Despite his sentences of five years for dealing in cocaine (released April 2001) and four years for use of a communication facility in facilitation of distribution of controlled substances (released December 2004), Tubbs again dealt in drugs. At the time of his arrest in 2014, Tubbs was serving a ten-year state sentence for conduct related to the offense in this action (Id.).

In this circumstance, early release would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", or to adequately deter criminal conduct and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1) and (a)(2)(A), (B), & (C). Accordingly, Tubbs' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

**DONE** and **ORDERED** this 24th day of September 2020.

                                              s / Kristi K. DuBose
                                              **KRISTI K. DuBOSE**
                                              **CHIEF UNITED STATES DISTRICT JUDGE**